JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
LAURA K. LIN (State Bar No. 281542)
laura.lin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for LinkedIn Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINKEDIN CORPORATION, | Case No. C14-00068 (WHA) |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | **(1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030 ET SEQ.;** |
| ROBOCOG INC. D/B/A/ HIRINGSOLVED, AND SHON BURTON, | **(2) VIOLATION OF CALIFORNIA PENAL CODE § 502;** |
| Defendants. | **(3) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §§ 1201 ET SEQ.;** |
| | **(4) BREACH OF CONTRACT;** |
| | **(5) TRESPASS; AND** |
| | **(6) MISAPPROPRIATION** |

1      Plaintiff LinkedIn Corporation ("LinkedIn" or "Plaintiff"), by and through its attorneys,

2  brings this Complaint against Defendants Robocog Inc. d/b/a HiringSolved (hereinafter,

3  "HiringSolved") and Shon Burton (collectively, "Defendants") for injunctive relief and damages.

4  LinkedIn alleges as follows:

5      1.      LinkedIn is the world's largest professional network with more than 277 million

6  members in over 200 countries and territories around the globe.  LinkedIn's mission is to connect

7  the world's professionals to make them more productive and successful.  Through its proprietary

8  platform, LinkedIn allows its members to create, manage and share their professional histories and

9  interests online.  In addition, LinkedIn provides valuable services to corporate recruiters and

10 headhunters with its Recruiter product, which allows them to identify among LinkedIn's members

11 top candidates for open positions.  At the heart of LinkedIn's platform are its members, who create

12 profiles that serve as their professional online identities and are accessible by any other member.

13     2.      Since May 2013, Defendants have employed various automated software programs

14 (often referred to as "bots") to register thousands of fake LinkedIn member accounts and have

15 extracted and copied data from many member profile pages.  Defendants engaged in this practice,

16 known as data "scraping," in an effort to unlawfully bolster HiringSolved, a fledgling recruiting

17 business founded and operated by Shon Burton.

18     3.      HiringSolved's business model, by its own admission, is premised on "crawl[ing]

19 the web" – automatically and systematically browsing the Internet – to obtain and copy

20 information concerning prospective job candidates.[1]  As a result of crawling and scraping, the

21 HiringSolved website includes individuals' profiles that Defendants have indiscriminately copied

22 directly from LinkedIn's own website.  These profiles frequently contain explicit references to

23 LinkedIn member pages, which HiringSolved has not even attempted to hide or otherwise remove.

24     4.      Defendants copied LinkedIn profiles and posted them to HiringSolved without

25 permission from either LinkedIn or its members.  Unlike on LinkedIn – where members have

26 complete control over their profiles and data – HiringSolved prevents individuals from editing or

27 _____

[1] *See, e.g.*, https://hiringsolved.com/blog/like-daft-punk-weve-been-up-many-long-nights-to-get-
28 lucky/  (last accessed March 26, 2014).

1   deleting the information that constitutes their HiringSolved profiles.

2        5.      Defendants' conduct is explicitly barred by LinkedIn's User Agreement, which

3   prohibits access to LinkedIn "through scraping, spidering, crawling or other technology or

4   software used to access data without the express written consent of LinkedIn or its Members."

5   Defendants knowingly and intentionally breached this and other access and use restrictions in

6   LinkedIn's User Agreement – which they agreed to abide by in registering their accounts – and

7   circumvented various technical protection barriers employed by LinkedIn.  In so doing, they have

8   violated an array of federal and state laws, including the Computer Fraud and Abuse Act, 18

9   U.S.C. § 1030, et seq. (the "CFAA"), California Penal Code § 502 et seq., and the Digital

10  Millennium Copyright Act, 17 U.S.C. § 1201 et seq. (the "DMCA"), and have engaged in

11  unlawful acts of breach of contract, trespass, and misappropriation.

12       6.      Defendants' unlawful conduct threatens the LinkedIn platform in several ways.  It

13  undermines the integrity and effectiveness of LinkedIn's professional network by polluting it with

14  thousands of fake member profiles.  The world's professionals utilize LinkedIn with the

15  expectation that its contents are accurate and its user profiles legitimate.  Moreover, by pilfering

16  data from the LinkedIn site, Defendants threaten to degrade the value of LinkedIn's Recruiter

17  product, in which LinkedIn has invested substantially over the years.   LinkedIn also has suffered

18  additional harms as a result of Defendants' activities, including, but not limited to, increased strain

19  on and disruption of its network servers and the expenditure of time and resources to investigate

20  and respond to this misconduct.

21       7.      LinkedIn's core guiding value is Members First.  Because LinkedIn's members

22  entrust LinkedIn with their professional histories and interests on LinkedIn's site, LinkedIn is

23  committed to earning and keeping its members' trust in everything LinkedIn does, including

24  protecting its members from attempts by third parties to scrape their data.

25       8.      LinkedIn responded swiftly to Defendants' activities, including promptly disabling

26  the fake member profiles and implementing additional technical protection barriers.  In addition to

27  these measures, and to ensure that future incidents do not occur, LinkedIn brings this action to

28  obtain injunctive relief halting Defendants' unlawful conduct.  Defendants' activities, if not

1  enjoined, threaten ongoing and irreparable harm to LinkedIn, including to its reputation and

2  substantial consumer goodwill.  LinkedIn further is entitled to its actual damages, statutory

3  damages, and/or exemplary damages as a result of Defendants' misconduct.

4  **JURISDICTION AND VENUE**

5      9.    This Court has federal question jurisdiction over this action under 28 U.S.C.

6  §§ 1331 and 1338 because this action alleges violations of federal statutes, including the CFAA,

7  18 U.S.C. § 1030, et seq., and the DMCA, 17 U.S.C. §§ 1201, et seq.  The Court has supplemental

8  jurisdiction over the state law causes of action pleaded herein pursuant to 28 U.S.C. § 1367.

9      10.    Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part

10  of the events or omissions giving rise to the claims occurred in this District.

11      11.    During all relevant times, Defendants have repeatedly, knowingly, and

12  intentionally accessed LinkedIn's servers located in this judicial district without LinkedIn's

13  authorization, and have contracted for such access, becoming registered LinkedIn members

14  subject to LinkedIn's User Agreement.  While accessing LinkedIn's servers, Defendants made

15  systematic and continuous contacts with this judicial district, and targeted their wrongful acts at

16  LinkedIn, which is headquartered in this judicial district.

17      12.    Defendant Burton resides in this judicial district, and as part of his daily functions

18  as Founder and CEO of Defendant HiringSolved, operates and controls Defendant HiringSolved

19  from this judicial district.

20      13.    Defendants engaged in their unlawful activities using a well-known cloud

21  computing platform.  At the time of the scraping alleged herein, Defendants' account on this

22  platform was billed to Defendant Burton's address in this judicial district.

23      14.    This is an intellectual property action to be assigned on a district-wide basis under

24  Civil Local Rule 3-2(c).

25  **THE PARTIES**

26      15.    LinkedIn is a Delaware corporation with its principal place of business in Mountain

27  View, California.

28      16.    Defendant HiringSolved is a California corporation.  HiringSolved has offices in

1    Chandler, Arizona and, on information and belief, also is operated from Defendant Burton's

2    personal residence in San Francisco, California.

3         17.    Defendant Burton is an individual and the founder and CEO of Defendant

4    HiringSolved.  Prior to founding HiringSolved, Burton was the founder and CEO of Wildcog, a

5    now defunct recruiting company.  On information and belief, Burton presently is a resident of San

6    Francisco, California as well as Chandler, Arizona.

7                                    **FACTS**

8                         **The LinkedIn Professional Network**

9         18.    LinkedIn is the world's largest professional network, with over 277 million

10   members worldwide and over 84 million members in the United States.  LinkedIn's mission is to

11   connect the world's professionals to make them more productive and successful.

12        19.    Through its proprietary platform, LinkedIn members are able to create, manage and

13   share their professional identity online, build and engage with their professional network, access

14   shared knowledge and insights, and find business opportunities, enabling them to be more

15   productive and successful.  LinkedIn's broader vision is to create economic opportunity for every

16   member of the global workforce.

17        20.    At the heart of LinkedIn's platform are its members, who create individual profiles

18   that serve as their professional profiles and are accessible by any other member, as well as (unless

19   a member chooses otherwise) anyone with an Internet connection.  LinkedIn counts executives

20   from all 2013 Fortune 500 companies as members.

21        21.    LinkedIn's core guiding value is Members First.  Because LinkedIn's members

22   entrust LinkedIn with their professional histories and interests on LinkedIn's site, LinkedIn is

23   committed to earning and keeping its members' trust in everything LinkedIn does, including

24   protecting its members from attempts by third parties to scrape their data.

25        22.    The LinkedIn website is an original copyrighted work.  Among the significant

26   original elements of the LinkedIn website are the distinctive page layout, design, graphical

27   elements, and organization of member profile pages and the LinkedIn homepage and news feed.

28   LinkedIn's U.S. copyright registrations for the LinkedIn website include Reg. Nos.

TX0007355749, TX0007030652, and TX0007455291.

23.     LinkedIn has invested and plans to continue to invest substantial time, labor, skill, and financial resources into the development and maintenance of the LinkedIn site.

### LinkedIn's User Agreement

24.     LinkedIn is available at no cost to anyone who wants to join and who agrees to the terms of LinkedIn's User Agreement and Privacy Policy.  A prospective member registers for an account by providing a first name, last name, email address, and password, and agreeing to LinkedIn's User Agreement and Privacy Policy.

25.     As described further below, Defendants registered thousands of fake member accounts as part of their data scraping activities.  For each of those accounts, Defendants agreed to be bound by LinkedIn's User Agreement.

26.     LinkedIn's User Agreement explains that members are granted a limited and revocable license to access and use LinkedIn in accordance with the terms of the User Agreement.

27.     LinkedIn's User Agreement specifically conditions members' right to access LinkedIn on their agreeing not to do so through the use of data scraping technologies and related conduct.  The agreement states:  "we grant you a limited, revocable, nonexclusive, nonassignable, nonsublicenseable license and right to access the Services, through a generally available web browser, mobile device or LinkedIn authorized application *(but not through scraping, spidering, crawling or other technology or software used to access data without the express written consent of LinkedIn or its Members)*, to view information and use the Services that we provide on LinkedIn webpages and in accordance with this Agreement."  (Emphasis added.)

28.     LinkedIn's "Do's and Don'ts" section of its User Agreement reiterates that members may not "undertake … [to] [u]se manual or automated software, devices, scripts robots, other means or processes to access, 'scrape,' 'crawl' or 'spider' any web pages or other services contained in the site."  The User Agreement further states that members "will only maintain one LinkedIn account at any given time," "will use [their] real name and only provide accurate information to LinkedIn," and "will not violate any rights of LinkedIn."  As described further below, Defendants' conduct is in flagrant violation of each of these provisions.

**LinkedIn's Recruiter Service**

29.      LinkedIn Recruiter is a premium LinkedIn product that allows corporate recruiters and headhunters to locate and recruit top candidates.  Unlike LinkedIn's free, basic accounts for its members, LinkedIn Recruiter requires users to pay a monthly fee for their premium access.

30.      LinkedIn Recruiter is one of LinkedIn's fastest growing services.  More than 16,000 clients and companies pay to use LinkedIn Recruiter.  LinkedIn Recruiter users include human resources departments at some of the most successful companies in the country among thousands of other large, medium and small business and recruiting firms.  Ninety of the Fortune 100 companies use LinkedIn Recruiter or another of LinkedIn's premium talent solutions products.

31.      Corporate recruiters and headhunters purchase LinkedIn Recruiter memberships in order to search for prospective candidates among LinkedIn's hundreds of millions of member profiles.  By using LinkedIn Recruiter's robust and exclusive search tools, recruiters can search the entire LinkedIn network for top candidates' names and profiles.  Recruiters may locate and contact members, including passive candidates who may not be looking for a job, by accessing LinkedIn's professional network through LinkedIn Recruiter.

**LinkedIn's Technological Safeguards and Security Measures
To Protect LinkedIn Against Unauthorized Access**

32.      LinkedIn fastidiously works to protect the integrity and security of its network and systems.  Among other things, it employs an array of technological safeguards and barriers designed to prevent data scrapers and other wrongdoers from gaining unauthorized access to LinkedIn's site.

33.      One such safeguard is LinkedIn's FUSE program.  FUSE imposes a limit on the activity that an individual LinkedIn user may initiate on the site.  This limit is intended to prevent would-be data scrapers utilizing automated technologies from quickly accessing a substantial volume of member profiles.

34.      Similarly, LinkedIn's Sentinel program monitors and blocks suspicious activity

1    associated with particular Internet Protocol ("IP") addresses.[2]

2         35.     LinkedIn also anticipated that data scrapers might attempt to create a multitude of

3    fake member accounts.  Accordingly, as a secondary layer of protection, LinkedIn implemented its

4    UCV system to thwart this misconduct.  The UCV system uses a number of parameters to

5    determine if a new account signup is suspicious.  If a suspicious signup is identified, the UCV

6    system imposes barriers intended to separate legitimate prospective members from automated data

7    scraping programs and bots.  Specifically, the UCV system introduces a CAPTCHA[3] field that

8    requires prospective members to re-type a word or text that appears in obscured, colored type.

9    These obscured words or text are legible to a real person – and familiar to those purchasing

10   concert tickets, for instance, as a common step in an online registration process – but difficult for

11   an automated program or bot to recognize.  By using CAPTCHAs, the UCV system prevents data

12   scrapers from automatically registering many new and illegitimate member accounts.

13        36.     LinkedIn also employs technical protocols designed to prevent unauthorized

14   automated bots and webcrawlers from accessing otherwise publicly available parts of the LinkedIn

15   site.  Known as a robots.txt file, this safeguard provides a set of instructions to any automated

16   technologies visiting the LinkedIn site.  While LinkedIn's robots.txt file does permit some

17   webcrawlers (e.g., search engines such as Google or Bing) to view the entire site, it prohibits and

18   is intended to prevent automated programs like those used by data scrapers.

19   **Defendants' Unlawful Business Model**

20        37.     HiringSolved is an online recruiting company.  It describes itself as "a growing

21   database of millions of candidates with revolutionary search tools to let you find talent fast."[4]

22        38.     HiringSolved openly touts that its business model is founded upon scraping data

23   from the Internet, including from the LinkedIn site.  HiringSolved, by its own admission,

24

25   _____

26   [2] An IP address in this context is a numerical label assigned to each access point to the Internet.

27   [3] CAPTCHA is an acronym for "Completely Automated Public Turing test to tell Computers and
     Humans Apart."

28   [4] *See* https://hiringsolved.com/ (emphasis added) (last accessed March 26, 2014).

"crawl[s] the web" to obtain and copy information concerning prospective job candidates.[5]  As one of HiringSolved's own marketing presentations explains, "Simply put, we're a distributed web crawler that searches the web and combines information about people.  Unlike job boards, which require the job-seeker to actively write and post their resume, HiringSolved searches constantly and assembles information like social profiles, contact information, published works and much more into a live social resume which is updated automatically as a person's social footprint changes."[6]

39.     Elsewhere on its website, HiringSolved brags that HiringSolved "gift wraps" information from LinkedIn's site for HiringSolved's own uses.  HiringSolved's blog states, "Instead of needing to use extremely complex search strings (or even simple searches) on Google, Bing, Yahoo, Monster, CareerBuilder, **LinkedIn**, etc. HiringSolved analyzes the big data for you and gift wraps it in a neatly formatted profile…"[7] (Emphasis added).

40.     HiringSolved further acknowledges that it is scraping LinkedIn's data by featuring LinkedIn's distinctive "in" logo on HiringSolved's marketing materials.  HiringSolved's graphics, including the one shown below, illustrate, and appear to trumpet, that HiringSolved is scraping data from LinkedIn's website for HiringSolved's own purposes.

///

---

[5] *See, e.g.*, https://hiringsolved.com/blog/like-daft-punk-weve-been-up-many-long-nights-to-get-lucky/  (last accessed March 26, 2014).

[6] *See* http://www.slideshare.net/HSsocial/hs-presentation-5 (last accessed March 26, 2014).

[7] *See* https://hiringsolved.com/blog/big-datas-big-implications-on-talent-sourcing/ (last accessed March 26, 2014).

**HiringSolved Informational Graphic:[8]**



41.    "[A]ggregat[ing] profiles" from LinkedIn, in this context, is synonymous with copying and extracting data from LinkedIn member profiles.

42.    As a result of HiringSolved's brazen conduct, certain candidates' profiles on HiringSolved's website even include explicit references to their LinkedIn profiles.  Defendants have copied these profiles from LinkedIn's website and posted them to HiringSolved.

[8] *See* https://hiringsolved.com/blog/so-hiringsolved-what-is-it-you-guys-do/ (last accessed March 26, 2014).

43.    Neither LinkedIn nor its members granted Defendants permission to copy profiles from LinkedIn.  Moreover, HiringSolved prohibits individuals from controlling their information after it appears on HiringSolved's site.  An individual whose profile was copied onto HiringSolved has no means to delete, or even edit, his or her HiringSolved profile.  These restrictions are contrary to LinkedIn's own values and practices whereby LinkedIn members have complete control over the information that constitutes their LinkedIn profiles and how that information appears.

44.    A search on HiringSolved's website for LinkedIn members shows copied profiles that reference LinkedIn member pages, as shown by the redacted examples below:

Example 1:



Example 2:



45.     HiringSolved sells access to this copied data to its subscribers, at rates ranging from $199 to $799 a month.

**Defendants' Data Scraping Activities**

46.     Beginning in May 2013, Defendants knowingly and intentionally circumvented FUSE, Sentinel, the UCV system, the robots.txt protocol and/or other LinkedIn security measures in order to engage in their data scraping activities.

47.     In May and June 2013, Defendants created thousands of member accounts (with fake names and contact information) to access and scrape data from many LinkedIn member profiles.

48.     In order to create each and every one of these fake member accounts, Defendants

1    had to agree to abide by the access and use restrictions in LinkedIn's User Agreement, which,

2    *inter alia*, prohibit "scraping, spidering, crawling or other technology or software used to access

3    data without the express written consent of LinkedIn or its Members," and require that members

4    "will only maintain one LinkedIn account at any given time" and "will use [their] real name and

5    only provide accurate information to LinkedIn." Defendants knowingly violated each of these

6    access and use restrictions in engaging in their unlawful conduct.

7          49.      In May and June 2013, Defendants circumvented FUSE – which limits the volume

8    of activity for each individual account – by creating thousands of different new member accounts

9    through the use of various automated technologies. Registering so many unique new accounts

10    allowed Defendants to view hundreds of thousands of member profiles per day.

11         50.      At the same time, Defendants also circumvented the UCV system by using

12    automated technologies to register thousands of fake member accounts without triggering the

13    UCV system's imposition of CAPTCHAs. Defendants also circumvented and bypassed

14    LinkedIn's robots.txt file, which specifically bans and is intended to prevent the use of

15    unauthorized automated data scraping programs and bots.

16         51.      LinkedIn initially identified Defendants' misconduct when it observed that

17    thousands of fake member accounts had collectively viewed many member profiles in a short

18    period of time. LinkedIn determined that the user accounts were fake after close inspection of

19    account details revealed clear patterns of automation. LinkedIn observed that the automated bots

20    that were running these fake accounts would use each account to view a small number of profiles,

21    thereby bypassing and circumventing FUSE's page view restrictions, and then would move on to

22    the next registered account to view additional profiles.

23         52.      LinkedIn conducted an extensive investigation of the Defendants' misconduct. In

24    the course of its investigation, it compiled spreadsheets tracking the IP addresses used by

25    Defendants. LinkedIn also identified and cataloged Defendants' fake member profiles, the

26    number of legitimate profiles viewed by each fake member, and the dates and times of

27    Defendants' activity on the LinkedIn website. LinkedIn disabled the fake member profiles and

28    implemented additional technological safeguards to protect against unauthorized access to the

1    LinkedIn site.

2        53.    As a result of this investigation, LinkedIn determined that Defendants accessed

3    LinkedIn using a well-known cloud computing platform that allows users like Defendants to rent

4    virtual computers on which to run their own computer programs and applications.  This platform

5    provides resizable computing capacity, which allows users to quickly scale capacity, both up and

6    down.  Users of this platform may temporarily run hundreds or thousands of virtual computing

7    machines.  Defendants used this cloud computing platform to create virtual machines to run

8    automated bots to scrape data from LinkedIn's website.

9        54.    As a result of Defendants' use of this cloud computing platform to scrape data from

10   LinkedIn's website, LinkedIn was able to identify Defendants.

11              **HiringSolved Founder and CEO Shon Burton's Active Participation in and**
                **Control of Defendants' Unlawful Activities**
12

13       55.    Defendant Burton is HiringSolved's Founder and CEO.  Burton has been and is the

14   primary actor in the activities of HiringSolved that give rise to LinkedIn's claims; he directs,

15   controls, ratifies, and participates in HiringSolved's unlawful activities.

16       56.    The account for the well-known cloud computing platform Defendants used to

17   engage in their unlawful activities was billed to Burton's address in this judicial district.  As

18   Burton has stated on the HiringSolved official blog, as a "Big Data startup, we have had to get

19   pretty creative in our approach to our crawler infrastructure."[9]  Burton similarly has described

20   HiringSolved's business model to the press as a "tech and value secret sauce" that depends upon

21   crawling the web to copy data from other websites.[10]

22       57.    Burton has been personally involved in and personally responsible for

23   (a) HiringSolved's scraping of LinkedIn member data from the LinkedIn site; (b) the development

24   of HiringSolved's business model and technological systems employed by HiringSolved in the

25   _____

26   [9] *See* https://hiringsolved.com/blog/goodbye-big-data-mdadm-no-recognizeable-superblock/ (last
     accessed March 26, 2014).

27   [10] *See* http://aztechbeat.com/2013/11/startup-hiringsolved-raises-1m-expansion/ (last accessed
     March 26, 2014).
28

scraping of data from the LinkedIn site; (c) the solicitation of financial support for the HiringSolved service; and (d) the widespread promotion of HiringSolved's service through statements to the press and others. Burton has personally supervised, and has a direct and personal financial interest in, HiringSolved's unlawful activities.

**Defendants Have Caused and Threaten
Ongoing and Irreparable Injury to LinkedIn**

58. By engaging in the data scraping incidents described above, Defendants have caused, and if not halted will continue to cause, ongoing and irreparable harm to LinkedIn, in a variety of ways.

59. LinkedIn will suffer ongoing and irreparable harm to the value of its consumer goodwill and trust, which LinkedIn has worked hard for years to earn and maintain, if Defendants' conduct continues.

60. The thousands of fake member profiles created by Defendants disrupt and degrade LinkedIn's site and services by reducing the accuracy and integrity of the information the site contains. LinkedIn's members expect the site to contain accurate and legitimate professional profiles – not useless fictions crafted by data scrapers.

61. The presence of fake member profiles also impairs legitimate members' ability to identify valid professional contacts. In particular, because LinkedIn enables its members to view which users have viewed their profiles, legitimate LinkedIn users whose profiles have been viewed by Defendants using a fake account may be confused or misled when they see that an unknown, fake member has viewed their profiles. Indeed, LinkedIn observed some of its valid members attempting to connect with these fake member profiles after noticing that the fake accounts had viewed their profiles.

62. This type of pollution to the LinkedIn network, if not halted, threatens ongoing and irreparable harm to the integrity of the LinkedIn platform and LinkedIn's reputation.

63. Further, by pilfering member data from the LinkedIn site, Defendants' misconduct threatens to degrade the value of LinkedIn's Recruiter product, which LinkedIn has invested substantially in over the years. On information and belief, Defendants, who have invested none of

their own time and resources into developing and building the LinkedIn platform, have engaged in their scraping activities in an attempt to establish a competing recruiting website and usurp LinkedIn's Recruiter product.

64.     Defendants' misconduct also has imposed significant strains on LinkedIn's servers, including through the use of automated technologies to view many member profiles.  Defendants' illegitimate profile views impaired LinkedIn's ability to dedicate its servers to supporting the activities of legitimate LinkedIn members.

65.     LinkedIn has suffered harm to its computer systems, and has expended significant human, financial, and technological resources, including hundreds of hours of employee time, investigating and responding to Defendants' unlawful activities, at a cost to LinkedIn of more than $5,000.

## FIRST CLAIM FOR RELIEF

### Computer Fraud and Abuse Act, 18 U.S.C. §1030 et seq.

66.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

67.     LinkedIn's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. §1030(e)(2).

68.     On information and belief, Defendants knowingly and intentionally accessed LinkedIn's computers and servers without authorization or in excess of the authorization permitted under LinkedIn's User Agreement and in circumvention of various technical barriers –  including FUSE, Sentinel, the UCV system, the robots.txt protocol, and/or additional safeguards – LinkedIn has employed to protect LinkedIn's computers and servers from unauthorized access.

69.     On information and belief, after gaining unauthorized access to LinkedIn's computers and servers, Defendants obtained and used valuable information from LinkedIn's protected computers and servers in transactions involving interstate or foreign communications in violation of 18 U.S.C. § 1030(a)(2).  This information includes, among other things, the contents of many LinkedIn member profiles, and this use, on information and belief, includes, among other things, distributing that content to others.

70.     Defendants knowingly, willfully, and with an intent to defraud, accessed

LinkedIn's computers and servers without authorization or in excess of authorization and obtained valuable information from LinkedIn's computers and servers that, on information and belief, Defendants used to obtain something of value in violation of 18 U.S.C. § 1030(a)(4).

71.     LinkedIn has suffered damage and loss by reason of these violations, including, without limitation, harm to LinkedIn's computer systems, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, in excess of $5,000 aggregated over a one year period.

72.     In addition, LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, LinkedIn is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

**California Comprehensive Computer Access and Fraud Act, Cal. Penal Code §502 et seq.**

73.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

74.     Defendants wrongfully obtained and used valuable information from LinkedIn's site, as alleged above.

75.     Defendants knowingly, fraudulently, and without permission accessed or caused to be accessed LinkedIn's computers, computer systems, and/or computer network in violation of Cal. Penal Code § 502(c)(7).

76.     Defendants knowingly, fraudulently, and without permission took, copied and made use of data, and files from LinkedIn's computers, computer systems, and/or computer networks, including to wrongfully control such data, in violation of Cal. Penal Code § 502(c)(1) & (2).

77.     Defendants knowingly, fraudulently, and without permission disrupted or caused the disruption of LinkedIn's computer services to authorized users of LinkedIn's computers, computer systems, and/or computer networks in violation of Cal. Penal Code § 502(c)(5).

78.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have caused damage to LinkedIn in an amount to be proven at trial.  LinkedIn is also entitled to recover

1   its reasonable attorney's fees pursuant to California Penal Code §502(e).

2        79.     LinkedIn believes that Defendants' acts were willful and malicious in that

3   Defendants' acts described above were done with the deliberate intent to improve Defendants'

4   business at LinkedIn's expense.  LinkedIn is therefore entitled to punitive damages.

5        80.     In addition, LinkedIn has suffered and will continue to suffer irreparable harm, and

6   its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.

7   Accordingly, LinkedIn is entitled to injunctive relief.

8                        **THIRD CLAIM FOR RELIEF**

9       **Violations of The Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq.**

10       81.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

11       82.     LinkedIn employs various layers of technological protections – including FUSE,

12   Sentinel, the UCV system, the robots.txt protocol, and additional safeguards – to protect

13   LinkedIn's computers and servers from unauthorized access.  These technological protection

14   measures effectively control access to the copyrighted materials on LinkedIn's servers, including

15   the LinkedIn website, member profile pages, and the LinkedIn homepage and news feed, and

16   protect LinkedIn's exclusive rights in these copyrighted materials.

17       83.     Despite LinkedIn's best efforts to protect the LinkedIn site from Defendants'

18   unauthorized access, Defendants circumvented LinkedIn's technological safeguards – including

19   FUSE, Sentinel, the UCV system, the robots.txt protocol, and/or additional safeguards – and

20   gained unauthorized access to LinkedIn's copyrighted materials, including without limitation the

21   copyrighted LinkedIn website, in violation of 17 U.S.C. § 1201(a).

22       84.     As a result of Defendants' wrongful acts, LinkedIn has suffered, is continuing to

23   suffer, and will continue to suffer damages to be proven at trial.  LinkedIn is further entitled to all

24   profits attributable to Defendants' wrongful acts to be proven at trial.  Alternatively, upon its

25   election at any time before final judgment is entered, LinkedIn is entitled to recover statutory

26   damages from Defendants pursuant to 17 U.S.C. § 1203 for each act of circumvention committed

27   by Defendants.

28       85.     Defendants' circumventions also have caused LinkedIn irreparable harm.  Unless

1  restrained and enjoined, Defendants will continue to commit such acts.  LinkedIn's remedies at

2  law are not adequate to compensate it for these inflicted and threatened injuries, and thus LinkedIn

3  is entitled to injunctive relief as provided by 17 U.S.C. § 1203.

4  <center>**FOURTH CLAIM FOR RELIEF**</center>

5  <center>**Breach of Contract**</center>

6      86.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

7      87.     Use of the LinkedIn website and use of LinkedIn services are governed by and

8  subject to the User Agreement.

9      88.     LinkedIn members are presented with the User Agreement and must affirmatively

10  accept the User Agreement to register for a LinkedIn account.

11      89.     At all relevant times, LinkedIn also prominently displayed a link to the User

12  Agreement on LinkedIn's homepage.

13      90.     Defendants accessed the LinkedIn website and affirmatively accepted and agreed to

14  the User Agreement to, among other things, create the fake member profiles that enabled

15  Defendants to access LinkedIn user profiles and scrape data from LinkedIn's website.

16      91.     The User Agreement is enforceable and binding on Defendants.

17      92.     Defendants repeatedly accessed the LinkedIn website with knowledge of the User

18  Agreement and all of its prohibitions.  Despite their knowledge of the User Agreement and its

19  prohibitions, Defendants accessed and continue to access the LinkedIn website to, among other

20  things, scrape, crawl, or use other automated technology or software to gain access to the LinkedIn

21  website without the consent of LinkedIn.  Moreover, Defendants maintained more than one

22  account (indeed, thousands of accounts) at any given time, and did not provide their real names or

23  provide accurate information to LinkedIn.

24      93.     Defendants' actions, as described above, have willfully, repeatedly, and

25  systematically breached the User Agreement.

26      94.     LinkedIn has performed all conditions, covenants, and promises required of it in

27  accordance with the User Agreement.

28      95.     Defendants' conduct has damaged LinkedIn, and caused and continues to cause

1   irreparable and incalculable harm and injury to LinkedIn.

2       96.     LinkedIn is entitled to injunctive relief, compensatory damages, and/or other

3   equitable relief.

4                              **FIFTH CLAIM FOR RELIEF**

5                                      **Trespass**

6       97.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

7       98.     Defendants intentionally, and without authorization, accessed and interacted with

8   LinkedIn, including without limitation, LinkedIn's website, computer systems and servers.

9       99.     Defendants' access to LinkedIn and the information contained therein required

10  Defendants to abide by the User Agreement.  By violating the terms of the User Agreement, and

11  LinkedIn's express efforts to combat their activities, Defendants unlawfully gained access to and

12  interfered and intermeddled with LinkedIn, its website, computer systems, and its servers.

13      100.    Defendants' unauthorized interference with and access to LinkedIn, its website,

14  computer systems, and its servers, among other harms, reduces LinkedIn's capacity to service its

15  users because it occupies and uses LinkedIn's resources.

16      101.    Defendants' conduct constitutes trespass that has harmed and will continue to harm

17  LinkedIn.  As a result, LinkedIn has been and will continue to be damaged.

18      102.    LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy

19  at law is not itself adequate to compensate it for injuries inflicted by Defendants.  Accordingly,

20  LinkedIn is entitled to injunctive relief.

21                              **SIXTH CLAIM FOR RELIEF**

22                                  **Misappropriation**

23      103.    LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

24      104.    LinkedIn has invested substantial time, labor, skill, and financial resources into the

25  creation and maintenance of LinkedIn, its computer systems and servers, including system and

26  server capacity, as well as the content on the LinkedIn website, which is time sensitive.

27      105.    Without authorization, Defendants wrongfully accessed LinkedIn's website,

28  computer systems and servers, and obtained data from the LinkedIn site without having to make

1  the substantial investment in time, labor, skill, and financial resources made by LinkedIn.

2      106.    On information and belief, Defendants compete with LinkedIn and have made data

3  from the LinkedIn site available to their customers and other third parties.  As such, Defendants'

4  use of LinkedIn's computer systems and servers, including system and server capacity, as well as

5  data from the LinkedIn site, constitutes free-riding on LinkedIn's substantial investment of time,

6  effort, and expense.

7      107.    As a result of this misappropriation, Defendants wrongfully compete, and/or enable

8  others to compete, with LinkedIn, and LinkedIn has been forced to expend additional time and

9  resources, including but not limited to, investigating and responding to Defendants' activities.

10      108.    LinkedIn has been and will continue to be damaged as the result of Defendants'

11  acts of misappropriation.

12      109.    LinkedIn has suffered and will continue to suffer irreparable injury, and its remedy

13  at law is not itself adequate to compensate it for injuries inflicted by Defendants.

14                    **PRAYER FOR RELIEF**

15          WHEREFORE, LinkedIn prays that judgment be entered in its favor and against

16  Defendants, as follows:

17      1.    A preliminary and permanent injunction enjoining and restraining all

18  Defendants, their employees, representatives, agents, and all persons or entities acting in concert

19  with them during the pendency of this action and thereafter perpetually from accessing or using

20  LinkedIn's website for any commercial purpose whatsoever.

21      2.    An order requiring Defendants to destroy all documents, data, and other

22  items, electronic or otherwise, in their possession, custody, or control, that were wrongfully copied

23  from LinkedIn's website.

24      3.    An award to LinkedIn of restitution and damages, including, but not limited

25  to, compensatory, statutory, treble damages, and punitive damages, as permitted by law;

26      4.    An award to LinkedIn of its costs of suit, including, but not limited to,

27  reasonable attorney's fees, as permitted by law; and

28      5.    Such other relief as the Court deems just and proper.

FIRST AMENDED COMPLAINT          CASE NO. C14-00068 (WHA)

**DEMAND FOR JURY TRIAL**

LinkedIn hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.


DATED:  March 27, 2014                    MUNGER, TOLLES & OLSON LLP




                                        By:    _/s/ Jonathan H. Blavin_
                                               JONATHAN H. BLAVIN

                                        Attorneys for LinkedIn Corportation